UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: KENNETH DARYLE RODRIGUEZ,　　　　　　　　　　　No. 13-12-12381 JA

Debtor.

## MEMORANDUM OPINION

There are two pending matters before the Court: 1) confirmation of the Debtor's proposed First Amended Chapter 13 plan (Docket No. 68); and 2) the Debtor's Motion to Continue the Automatic Stay under 11 U.S.C. § 362(c)(3)(B) ("Motion to Continue Stay")(Docket No. 9). The Debtor's former spouse, Denise Comstock, objected to both matters.[1] Because confirmation of the Debtor's First Amended Plan and the Motion to Continue Stay raised common issues regarding the Debtor's good faith, the parties agreed to have the Court hear both matters together. The Court held a final, evidentiary hearing on confirmation of the Debtor's First Amended Plan and on the Motion to Continue Stay on December 20, 2013, and took the matters under advisement. Chris W. Pierce and Leslie Maxwell appeared at the final hearing on behalf of the Debtor. Stephen C.M. Long appeared at the final hearing on behalf of Denise Comstock. The Chapter 13 Trustee also appeared.[2]

After consideration of the evidence and testimony admitted at the final hearing as well as the trial briefs submitted by counsel for the Debtor and counsel for Ms. Comstock, and being otherwise sufficiently informed, the Court concludes that the Debtor filed his Chapter petition in good faith notwithstanding his prior failed Chapter 11 case. However, based on the totality of

---

[1] *See* Creditor Comstock's Objection to Debtor's Motion to Continue Automatic Stay and Memorandum in Support of the Objection (Docket No. 18); Creditor Comstock's Objection to Confirmation of First Amended Plan (Docket No. 79); Creditor Comstock's First Amended Objection to Confirmation of First Amended Chapter 13 Plan (Docket No. 80).

[2] The Chapter 13 Trustee filed an objection to confirmation of the Debtor's First Amended Plan, but the Debtor reached an agreement with the Chapter 13 Trustee that resolved her objection to confirmation. *See* Chapter 13 Trustee's Objection to Confirmation of Debtor's First Amended Plan - Docket No. 81

the circumstances, the Court concludes further that the First Amended Plan fails to satisfy the good faith requirement under 11 U.S.C. § 1325(a)(3). Finally, because the Debtor cannot at this time demonstrate by clear and convincing evidence that this Chapter 13 case will result in a confirmed plan that will be fully performed, the automatic stay terminated with respect to the Debtor and to the Debtor's property on the thirtieth day after the date this Chapter 13 case was filed. The Court will, therefore, deny the Motion to Continue the Automatic Stay.

## FINDINGS OF FACT

This case is not the Debtor's first bankruptcy filing. On September 13, 2010, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code as Case No. 10-11-14645 (the "Chapter 11 Case"). During the Chapter 11 Case, the Debtor failed to timely file monthly operating reports. An amended monthly operating report for December 2010, and the monthly operating reports for the months of January 2011, February 2011, March 2011 and April 2011 were filed on June 22, 2011. *See* Exhibits 8 – 12. Monthly operating reports for May 2011, June 2011, July 2011, August 2011, September 2011 and October 2011 were filed on December 29, 2011. *See* Exhibits 15 – 20. Monthly operating reports for November 2011 and December 2011 were filed on May 1, 2012. *See* Exhibits 26 – 27. The Debtor testified at the final confirmation hearing that he understood he was obligated to file operating reports as part of his Chapter 11 Case, but the he did not know that the reports were to be filed monthly. The Debtor provided financial information to his accountant at the request of the Debtors' bankruptcy counsel, and the accountant prepared the monthly operating reports filed in the Debtor's Chapter 11 Case. The Debtor did not sign any of the monthly operating reports filed in his Chapter 11 Case.

The Debtor opened a debtor-in-possession bank account (the "DIP account") as part of his Chapter 11 Case. The monthly operating reports and account records from the DIP account

2

reflect that the Debtor spent significant sums of money during the pendency of the Debtor's Chapter 11 Case on personal travel and entertainment. The Debtor took a trip to Lima, Peru, where he got engaged. He purchased an engagement ring. He took a trip to Las Vegas with his sons to see the University of New Mexico Lobos basketball team play. Some of the expenses characterized in the bank account summaries as "recreation and entertainment" reflect an address of 8301 Golf Course. This expense is not for golf, though the Debtor testified that he plays golf once or twice a month. The address on Golf Course is the location of a Smith's grocery store where the Debtor purchased groceries. Other expenses include payments to dating cites such as E-Harmony. The debtor did not request permission from the Court to incur debt during his Chapter 11 Case before incurring his travel expenses.

The Schedules filed in the Debtor's Chapter 11 Case reflect that $5,000 was placed in his parents' bank account. *See* Exhibit 5-2. The Debtor testified that he placed those funds in his parents' account so that in the event the Internal Revenue Service levied his bank account, he would still have some funds available to him. The Debtor testified that he relied on his attorney in preparing and filing his Schedules and Statement of Financial Affairs and in filing the monthly operating reports in his Chapter 11 Case, and that he believes his attorney did not adequately advise him about the requirements and restrictions on a Chapter 11 debtor in possession. The Debtor retained different counsel to represent him in this Chapter 13 case.

The United States Trustee filed a motion seeking to dismiss or convert the Debtor's Chapter 11 Case for cause based on the Debtor's failure to file a plan and disclosure statement within the exclusivity period, the Debtor's failure to timely file monthly operating reports, and the Debtor's failure to pay quarterly fees to the United States Trustee. *See* Exhibit 7. Ms. Comstock filed two motions seeking to dismiss the Debtor's Chapter 11 Case. *See* Exhibits 14

3

and 22. The Debtor ultimately consented to dismissal of his Chapter 11 Case, and an Order Dismissing [Debtor's Chapter 11] Case was entered on May 10, 2012.[3]

Prior to the filing of the Chapter 11 Case, Denise Comstock filed dissolution of marriage proceedings against the Debtor in the Second Judicial District Court, State of New Mexico, County of Bernalillo in case No. D-202-DM-2003-04507 (the "Dissolution of Marriage Proceeding"). As part of the Dissolution of Marriage Proceeding, Ms. Comstock obtained an order determining that the Debtor cashed in various Individual Retirement Accounts and Retirement Funds in the amount of $123,870.00, one-half of which were owned by Ms. Comstock. *See* Exhibit 1. The Debtor admits that he took the one-half of the retirement funds awarded to Ms. Comstock in the Dissolution of Marriage Proceeding, but testified that when he cashed in the retirement funds, he thought that the funds had already been split, leaving only his share in the account. Ms. Comstock also obtained an order in the Dissolution of Marriage Proceeding determining that the Debtor had violated prior orders of that court. *See* Exhibit 2. The Debtor was held in contempt of court and sent to jail because of his failure to make payments to Ms. Comstock as required by the orders entered in the Dissolution of Marriage Proceeding. On September 10, 2010, an order was entered in the Dissolution of Marriage Proceeding requiring the Debtor to pay Ms. Comstock $15,000 as a condition to release from custody, with an additional requirement to pay Ms. Comstock an additional $14,000 by Friday, September 17, 2010. *See* Stipulated Order Resolving Emergency Motion to Set Terms and Order Release from Custody ("Conditional Release Order") - Exhibit 34. Failure to pay the additional $14,000 would result in the issuance of another bench warrant. *Id.* The Debtor obtained funds from his parents to make the $15,000 payment required under the Conditional Release Order.

---

[3]The dismissal order from the Chapter 11 Case was not admitted as an exhibit. But because the Debtor does not dispute that he agreed to dismiss the Chapter 11 Case, the Court will take judicial notice of the Order Dismissing Case filed in the Chapter 11 Case. *See* Chapter 11 Case – Docket No. 107.

Because the Debtor did not have sufficient funds to make the additional $14,000 payment required under the Conditional Release Order, the Debtor filed his Chapter 11 Case the day before the deadline for that payment contained in the Conditional Release Order.

The Debtor filed this Chapter 13 case on October 31, 2012, forty-three days following the dismissal of his Chapter 11 Case. During the period between the dismissal of the Debtor's Chapter 11 Case and the filing of this case, the Debtor's former counsel sent a letter to Ms. Comstock's counsel forwarding a check for $14,000 representing the additional payment due under the Conditional Release Order and further seeking to settle the balance of her claim. *See* Exhibit 30. The settlement efforts were not successful. Also during this period the Internal Revenue Service ("IRS") had threatened to levy his bank account. The Debtor testified that he had received collection notices and an intent to levy. The IRS in fact had levied $8,000 from the Debtor's bank account in the past.

The Debtor testified that he filed this Chapter 13 case primarily because of his tax debt due to the IRS, and because he was afraid he would not be able to pay his bills and meet his obligations to his children if the IRS were to levy his bank accounts.

The Debtor is a dentist. At the time he filed his Chapter 11 Case, he was unemployed. *See* Exhibit 5-19. He is currently employed as a dentist for the Pueblo of Sandia earning gross wages of $14,664.15 per month. Schedule I reflects that he has been employed by Sandia Pueblo for 1.5 years. Schedule I also reflects that the Debtor contributes $733.20 per month to a 401(k) retirement plan.

In 2008 the Debtor sold his former dental practice. The sale of the Debtor's dental practice was not listed in the Debtor's Statement of Financial Affairs filed in his Chapter 11 Case, though the income from the sale was reported on the Debtor's Schedule I filed in his

5

Chapter 11 Case. *See* Exhibit 5-19. Schedule B filed in this Chapter 13 case on July 13, 2012 reflects three promissory notes arising from the sale of the Debtor's dental practice, that the payments to the Debtor under the notes total $6,037 per month, that the total remaining balance of the payments due under the three promissory notes is $235,443, and that the current value of the Debtor's interest in the three promissory notes is $117, 721. *See* Exhibit 31. The Debtor testified that this figure represented a discounted amount that he believed he might be able to realize if he sold the promissory notes. The Debtor later amended his Schedule B to reflect that the current value of the three promissory notes is $235, 443. *See* Exhibit 33. The Debtor's Schedule I and the Debtor's Amended Schedule I both reflect the monthly income in the amount of $6,037 from the three promissory notes. *See* Exhibits 31 and 33. The Debtor has two children. The Debtor's Schedule J and Amended Schedule J reflect monthly alimony, maintenance and support payments of $1,997.00, and court-ordered monthly payments for private school in the amount of $2,100. *See* Exhibits 31 and 33. The Debtor's Amended Schedule J reflects monthly net income of $5,958.08. *See* Exhibit 33. The payments to the Debtor from the sale of the Debtor's dental practice will cease in 2015. All of the Debtor's tuition payments for his children's private school and child support payments are current. All of the Debtor's tax returns have been filed.

The Debtor scheduled a debt to his father in the amount of $140,000. *See* Schedule F - Exhibit C. He testified that this figure represents his best estimate of the total amount he borrowed from his parents: he initially borrowed $130,000 to pay Ms. Comstock under the marital settlement agreement; his parents lent him an additional $14,000 to secure his release from jail; and he paid his parents back approximately $4,000. This figure differs from the $130,000 figure reported on the Schedules filed in the Debtor's Chapter 11 Case. Delfino

6

Rodriguez filed a claim in the Debtor's Chapter 13 bankruptcy case in the amount of $130,000. *See* Claims Register - Exhibit E. Ms. Comstock filed an objection to the claim. *Id.*

The Debtor's First Amended Chapter 13 plan proposes payments of $6,100 per month for a period of 56 months. *See* Exhibit A. The Debtor has outstanding, past due state and federal income taxes. *See* Exhibit E - Claims Register from Debtor's Chapter 13 case reflecting Claim No. 1-1 filed by the IRS and claim No. 2 filed by NMTR. The Debtor's First Amended Chapter 13 plan reflects that Internal Revenue Service has a claim in the amount of $178,945.53 secured by the Debtor's real and personal property, and a priority claim in the amount of $6,703.96, and that the New Mexico Taxation and Revenue Department has a claim secured by the Debtor's real and personal property in the amount of $19,626.27. *Id.* The Debtor proposes to pay all tax claims in full.

The First Amended Chapter 13 Plan also reflects that there are pre-petition arrearages on the Debtor's residence, and that the Debtor will pay those pre-petition arrearages through the plan. *Id.* The Debtor's proposed Order Confirming Chapter 13 Plan dated October 31, 2012 ("Proposed Confirmation Order") provides that the Debtor will make plan payments sufficient to make a minimum distribution of $91,675 plus tax refunds to attorney's fees, trustee's fees and allowed priority and non-priority unsecured claims, and that the Debtor will make plan payments to the trustee in an amount sufficient for a minimum distribution of $103,812 to allowed priority and non-priority secured claims. *Id.* The Proposed Confirmation Order also provides that the Debtor's plan payments will increase from $6,100 per month to $6,527 per month for 17 months beginning January 22, 2013, increase by $1050 each month for 16 months beginning September 22, 2014, and decrease by $6,037 for the remaining period of the plan. *Id.* at ¶ 6. The plan payments will be supplemented by agreement or by further order of the Court as a result of each

7

child reaching the age of majority, graduating, or ceasing to attend secondary school. *Id.* at ¶¶ 5 and 6. The Debtor will not pay interest to the IRS on its allowed priority claim. *Id.* at ¶ 7.

The proposed Chapter 13 plan payments exceed the net monthly income reported on the Debtor's Amended Schedule J. In order to make the plan payments proposed in the Debtor's Second Amended Plan, he will have to make personal sacrifices and changes to his lifestyle. He has no monthly income left over after making his Chapter 13 plan payment and paying his living expenses.

Denise Comstock filed a proof of claim in the Debtor's Chapter 13 bankruptcy case in the amount of $63,451.63. *See* Exhibit E. Although the Debtor scheduled the debt to Ms. Comstock in the amount of $30,000, the Debtor has not objected to Ms. Comstock's claim. *See* Schedule F- Exhibit C and Exhibit E. The Debtor's plan will not pay Ms. Comstock's claim in full. The Debtor testified that he did not realize until recently that the balance of the debt to Ms. Comstock after completion of his Chapter 13 plan payments will be discharged through this Chapter 13 case. He testified further that the dischargeability of her claim did not factor in to his decision to seek relief under Chapter 13. Ms. Comstock testified that she is forty-four years old, that she is employed by a school, and that she currently has $3,000 in a 401(k) plan in which her employer matches the funds she contributes.

## DISCUSSION

A. <u>Chapter 13 Plan Confirmation</u>

Confirmation of a debtor's proposed chapter 13 plan is governed by 11 U.S.C. § 1325. The parties stipulated for purposes of confirmation that the Debtor's First Amended Plan satisfies the best interest of creditors requirement, the disposable income requirement, and the

Case 12-12381-j13    Doc 100    Filed 02/11/13    Entered 02/11/13 11:44:54 Page 8 of 19

feasibility requirement.[4] The parties also stipulated for purposes of the hearing that the Debtor is eligible for Chapter 13 relief.[5] Two of the requirements for confirmation that Ms. Comstock contends the Debtor has failed to satisfy are that the plan must be "proposed in good faith and not by any means forbidden by law" and that "the action of the debtor in filing the petition was in good faith." 11 U.S.C. § 1325(a)(3) and (7).[6]

To determine whether a Chapter 13 *petition* was filed in good faith and whether a proposed Chapter 13 *plan* was filed in good faith courts employ a totality of the circumstances test.[7] The factors for both good faith requirements are similar, but not identical.[8] At least one

---

[4]*See* 11 U.S.C. § 1325(a)(4)(requiring that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date," described as the "best interest of creditors test"); 11 U.S.C. § 1325(a)(6)(requiring, upon a creditor's objection to confirmation, that "the debtor will be able to make all payments under the plan and to comply with the plan," described as "feasibility"); 11 U.S.C. § 1325(b)(1)(requiring the debtor to devote "all of the debtor's projected disposable income . . . to make payments to unsecured creditors under the plan"). Ms. Comstock's objection to confirmation raised all of these objections as well as the eligibility requirement under 11 U.S.C. § 109(e). *See* Docket No. 80.

[5]*See* 11 U.S.C. § 109(e)(governing eligibility for Chapter 13 relief and limiting the total amount of non-contingent, liquidated, unsecured debt that can be reorganized through Chapter 13).

[6]The Chapter 13 plan confirmation requirement that the petition be filed in good faith was added as part of the Bankruptcy Abuse Provision and Consumer Protection Act of 2005 ("BAPCPA"). Before BAPCPA, filing a Chapter 13 petition in bad faith was cause for dismissal under 11 U.S.C. § 1307. *See In re Platt,* 2012 WL 5842899, *1 (Bankr.S.D.Ind. Nov. 19, 2012)(observing that "[p]rior to 2005, a debtor's lack of good faith in filing the chapter 13 petition was a judicially created "cause" for dismissal under § 1307[,]" and that "[w]ith the enactment of BAPCPA . . . it became another prerequisite to confirmation under § 1325(a)(7)."). After BAPCPA, bad faith filing remains a ground for dismissal under 11 U.S.C. § 1307(c).

[7]*See Flygare v. Boulden,* 709 F.2d 1344 (10th Cir. 1983)(adopting "totality of circumstances" test for determining whether a Chapter 13 plan has been proposed in good faith); *Gier v. Farmers State Bank of Lucas, Kansas (In re Gier),* 986 F.2d 1326, 1329 (10th Cir. 1993)(whether a case should be dismissed under 11 U.S.C. § 1307(c) based on a debtor's bad faith in filing a Chapter 13 petition must be based on the totality of the circumstances); *Platt,* 2012 WL 5842899 at *1 ("Both §1325(a)(3)'s good faith proposal of the plan and § 1325(a)(7)'s good faith filing of the petition employ a 'totality of the circumstances' test in determining whether these prerequisites to confirmation have been met."). *See also, In re Molina,* 420 B.R. 825 (Bankr.D.N.M. 2009)(applying the *Flygare* factors to assess the good faith of the debtors' plan); *In re Tomasini,* 339 B.R. 773, 777 (Bankr.D.Utah 2006)(acknowledging that "the inquiry under §1325(a)(7) . . . is also governed by a totality of the circumstances test."); *In re Ford,* 345 B.R. 713 (Bankr.D.Colo. 2006)(applying a "totality of the circumstances" test to determine whether the debtor's plan was proposed in good faith); *In re Montoya,* 333 B.R. 449 (Bankr.D.Utah 2005)(applying totality of circumstances test to determine whether the debtor filed his Chapter 13 case in good faith); *In re Shafer,* 393 B.R. 655, 661 (Bankr.W.D.Wis. 2008)(stating that following the enactment of the BAPCPA, the totality of the circumstances test for assessing good faith continues to apply both to the filing of the petition and to the filing of the plan).

[8]The *Flygare* factors for assessing whether a debtor's Chapter 13 plan has been proposed in good faith are:
  (1) the amount of the proposed payments and the amount of the debtor's surplus;
  (2) the debtor's employment history, ability to earn and likelihood of future increases in income;
  (3) the probable or expected duration of the plan;

9

court has found that pre-petition conduct is irrelevant to the determination of whether a debtor filed a Chapter 13 plan in good faith. *See, In re Jongsma,* 402 B.R. 858, 870 (Bankr.N.D.Ind. 2009)(stating that "pre-petition conduct of the debtor is now irrelevant to the determination of good faith under 11 U.S.C. § 1325(a)(3)."). [9] When applying a totality of the circumstances test, "the weight given each factor will necessarily vary with the facts and circumstances of each case." *Flygare,* 709 F.2d at 1348. The same holds true with respect to the totality of circumstances test applied to determine the debtor's good faith in filing the petition. *See Montoya,* 333 B.R. at 458 (observing that under the *Gier* test for determining whether the petition was filed in good faith, the "factors are not necessarily weighted, nor are they exhaustive

---

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
(5) the extent of preferential treatment between classes of creditors;
(6) the extent to which secured claims are modified;
(7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
(8) the existence of special circumstances such as inordinate medical expenses;
(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
(11) the burden which the plan's administration would place upon the trustee.
*Flygare,* 709 F.2d at 1347-348 (quoting *United States v. Estus (In re Estus),* 695 F.2d 311, 317 (8th Cir. 1982).

The non-exclusive factors adopted by the Tenth Circuit in *Gier* for assessing whether to dismiss a Chapter 13 case based on a bad faith filing are:
the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding;
the timing of the petition;
how the debt arose;
the debtor's motive in filing the petition;
how the debtor's actions affected creditors;
the debtor's treatment of creditors both before and after the petition was filed; and
whether the debtor has been forthcoming with the bankruptcy court and the creditors.
*Gier,* 986 F.2d at 1329 (quoting *In re Love,* 957 F.2d 1350, 1357 (7th Cir. 1992)).

*But see In re Hopper,* 474 B.R. 872, 884 n.23 (Bankr.E.D.Ark. 2012)(noting that the Eighth Circuit "has articulated the same standard for finding bad faith in both instances")(citations omitted); *In re Hall,* 346 B.R. 420, 426 (Bankr.W.D.Ky. 2006)(stating that the standard for good faith under 11 U.S.C. § 1325(a)(3) and 11 U.S.C. § 1325(a)(7) is identical).

[9] *But cf. Flygare,* 709 F.2d at 1348 (including among the good faith factors relevant to the debtor's plan "the motivation and sincerity of the debtor in seeking Chapter 13 relief"); *Neufeld v. Freeman,* 794 F.2d 149, 150-153 (4th Cir. 1986)(holding that "both pre-petition conduct and prior bankruptcy filings by the debtor may be relevant to the good faith inquiry under §1325(a)(3)[]" but that pre-petition culpability on its own is not sufficient to deny confirmation based on lack of good faith. "[A] Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims.").

10

. . ."). The Debtor bears the burden of demonstrating both that the petition was filed in good faith and that the plan was proposed in good faith. *In re Alexander,* 363 B.R. 917, 921-22 (10th Cir. BAP 2007)(holding that a Chapter 13 debtor bears the burden of proving his good faith under 11 U.S.C. § 1325(a)(3))(citations omitted); *In re Ellsworth,* 455 B.R. 904, 918 (9th Cir. BAP 2011)(with BAPCPA's addition of 11 U.S.C. § 1325(a)(7), "the debtor, as plan proponent, has the burden of proof on the confirmation issues of whether both the case *and* the plan were filed in good faith.").[10]

### *Whether the Debtor filed his Chapter 13 Petition in Good Faith – § 1325(a)(7)*

The majority of the Debtor's actions with which Ms. Comstock takes issue concern the Debtor's conduct in his prior Chapter 11 Case: the Debtor failed to timely file monthly operating reports; the monthly operating reports that the Debtor filed were deficient; and the Debtor used significant sums of money on personal travel and entertainment. The Debtor ultimately consented to dismissal. The Court finds that the Debtor's pre-petition behavior during the pendency of his Chapter 11 Case in failing to comply with the requirements of Chapter 11 is by itself insufficient to establish that the Debtor did not file his Chapter 13 petition in good faith.

Other factors, such as the nature of the debt and how the debt to Ms. Comstock arose, weigh in favor of finding that the Debtor did not file his Chapter 13 petition in good faith. The debt to Ms. Comstock arose as a result of the Debtor's misappropriation of her share of the retirement funds awarded to her as a part of the Dissolution of Marriage Proceedings. Such debt would not be dischargeable in a Chapter 7 case, but any unpaid balance of her claim will be discharged at the completion of the Debtor's Chapter 13 Plan. On the other hand, the Debtor's

---

[10] Dismissal for bad faith filing of a petition under 11 U.S.C. § 1307(c) places the burden of proof on the objecting creditor. *In re Werts,* 410 B.R. 677, 690 (Bankr.D.Kan. 2009)(noting that "the overwhelming majority of Courts have held that the party moving to dismiss or convert a case under §1307(c) bears the burden of showing that the case was not filed in good faith.")(citations omitted).

11

motive in seeking relief under Chapter 13 in order to deal with significant debts to the taxing authorities, coupled with his concern that if the IRS were to levy on his accounts it would impair the Debtor's ability to take care of his children and make payments to creditors, including child support payments to Ms. Comstock, weighs in favor of finding good faith. Ms. Comstock complains of the manner in which the Debtor originally valued the promissory notes from the sale of the Debtor's dental practice, and the change in the scheduled amount of the Debtor's father's claim from the amount scheduled in the Debtor's prior Chapter 11 Case.

Considering all of the facts and circumstances, the Court finds that the Debtor filed his Chapter 13 petition in good faith. He has given a valid reason for seeking Chapter 13 relief. He paid Ms. Comstock the additional $14,000 required under the Conditional Release Order following the dismissal of his Chapter 11 Case, and he sought to compromise her claim before filing this latest petition. He commenced his Chapter 13 case in response to a threatened IRS levy. Further, the payments the Debtor will be required to make under the proposed First Amended Chapter 13 Plan will constrain the Debtor's former spending habits that that ran afoul of the requirements of Chapter 11.

### *Whether the Debtor Filed the Chapter Plan in Good Faith - §1325(a)(3)*

Ms. Comstock objects to the Debtor's proposed contribution of $733.20 per month to his retirement fund over the life of the plan.[11] In this case the Debtor's Schedule J filed in his

---

[11] There is a split in authority as to whether a Chapter 13 debtor can make post-petition voluntary contributions to a retirement fund. *Compare, In re Seafort,* 669 F.3d 662 (6th Cir. 2012)(holding that Chapter 13 debtors could not continue to make voluntary retirement contributions in the same amount as their 401(k) loan repayments after repayment of the loan); *In re Parks,* 475 B.R. 703 (9th Cir. BAP 2012)(holding that Chapter 13 debtors cannot make post-petition voluntary retirement contributions in *any* amount); *In re McCullers,* 451 B.R. 498 (Bankr.N.D.Cal. 2011)(same); and *In re Prigge,* 441 B.R. 667 (Bankr.D.Mont. 2010)(same) *with In re Egan,* 458 B.R. 836 (Bankr.E.D.Pa. 2011)(holding that Chapter 13 debtors can make voluntary contributions to a retirement account in excess of the amount of their pre-petition contributions); *In re Glisson,* 430 B.R. 920, 922-23 (Bankr.D.Ga. 2009)(stating that "neither a debtor's contributions to a 401(k) plan nor repayments of amounts borrowed from a 401(k) plan constitute disposable income under § 1325(b)[]" and concluding that "[t]he plain meaning of the applicable provisions manifests a congressional intent to 'place[] retirement contributions outside the purview of a

12

Chapter 13 case reflects a retirement contribution of $730 per month. The Debtor's Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income reported on Form B22C reflects a monthly retirement deduction of $714.73. *See* Exhibit G – line 55. Thus, the Debtor's proposed voluntary retirement contribution is consistent with his historical contribution reflected on Form B22C. However, given the surrounding facts and circumstances, the Court finds that the Debtor cannot make the proposed voluntary contributions to his retirement account and satisfy the good faith requirement of 11 U.S.C. § 1325(a)(3).

Ms. Comstock's unsecured non-priority claim arises from Debtor's misappropriation of her retirement funds before the filing of his Chapter 11 Case. Yet, the Debtor now seeks to fund his own retirement by contributions of over $700 per month over the life of his Chapter 13 plan, and to discharge the balance of Ms. Comstock's claim upon completion of the plan. At $733.20 per month, which is 5% of the Debtor's gross monthly wages, the Debtor will have contributed over $42,000 to his own retirement over the life of the plan. That is a material sum in the context of the Debtor's plan. Ms. Comstock, on the other hand, now has a total of $3,000 in retirement savings. Further, if the claim of the Debtor's parents is allowed, the majority of funds to be distributed to holders of allowed unsecured non-priority claims will go to the Debtor's parents. For these reasons, the Court finds that the Debtor has failed to demonstrate that his proposed Chapter13 plan was filed in good faith.

---

[c]hapter 13 plan.'")(quoting *In re Johnson,* 346 B.R. 256, 263 (Bankr.S.D.Ga. 2006)); and *Johnson,* 346 B.R. at 263 (finding that a debtor can make voluntary retirement contributions and still comply with the good faith requirement of 11 U.S.C. § 1325(a)(3)). In considering this issue, courts analyze the interplay among Bankruptcy Code sections defining property of the estate under 11 U.S.C. § 541, property of a Chapter 13 estate under 11 U.S.C. § 1306, and the disposable income requirements under Chapter 13. *See, e.g., McCullers,* 451 B.R. at 503-504 (analyzing 11 U.S.C. § 541(b)(7)); *Egan,* 458 B.R. at 845 (analyzing the language in 11 U.S.C. § 547(b)(7) and 11 U.S.C. § 1306(a)); *Seafort,* 669 F.3d at 665-66 (considering the projected disposable income requirement of 11 U.S.C. §1325(b)(1) in light of 11 U.S.C. § 541(b)(7)); *In re Devilliers,* 358 B.R. 849, 864-65 (Bankr.E.D.La. 2007)(comparing 11 U.S.C. § 541(b)(7) with the disposable income requirements under 11 U.S.C. § 1325(b)(2)).

Because the parties stipulated for purposes of confirmation that the Debtor has met the disposable income requirement, the Court will not address the Debtor's proposed voluntary retirement contribution within that context. Instead, the Court will confine its consideration of the Debtor's voluntary retirement contributions to the good faith requirement under 11 U.S.C. § 1325(b)(3).

Further, the *Flygare* factors, particularly factors (1) and (7)[12] also weigh in favor of finding that the Debtor's Chapter 13 plan fails to meet the good faith requirement for confirmation. Ms. Comstock's claim would otherwise be non-dischargable in a Chapter 7 or Chapter 11 case. The Court finds the Debtor's testimony that he did not realize that his Chapter 13 plan would discharge the remainder of Ms. Comstock's claim somewhat disingenuous. The Debtor scheduled Ms. Comstock's claim at less than half of the amount reflected in her proof of claim, yet the Debtor did not object to Ms. Comstock's claim. The Court will, therefore, deny confirmation of the Debtors' First Amended Chapter 13 plan.

B. <u>Continuation of the Automatic Stay</u>

If a debtor had a case pending within the one-year period prior to the filing of the current case, but the prior case ended in dismissal, the automatic stay "terminate[s] with respect to the debtor on the 30th day after the filing of the later case." 11 U.S.C. § 362(c)(3)(A). The Debtor filed his Motion to Continue the Stay pursuant to 11 U.S.C. § 362(c)(3)(B), which provides that the Court may continue the automatic stay after notice and a hearing, provided the debtor "demonstrates that the fling of the later case is in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B).

A presumption that a debtor has filed a petition in bad faith as to all creditors arises in three situations: 1) if the debtor had more than one case pending during the year before the current case; 2) if a prior case was dismissed due to the debtor's failure to file or amend certain documents, provide court-ordered adequate protection, or perform under a confirmed plan; or 3) if there has been no substantial change in the debtor's financial condition since the dismissal of

---

[12] *Flygare* factors (1) and (7) are:
    (1) the amount of the proposed payments and the amount of the debtor's surplus;
    (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7
*Flygare,* 709 F.2d at 1347.

14

the most recent previous case, and there is no other reason that the current case will end with a confirmed plan that will be fully performed.[13] If the presumption arises, the debtor must rebut the presumption by "clear and convincing evidence" in order to continue the automatic stay. 11 U.S.C. § 362(c)(3)(B). Ms. Comstock asserts that the presumption arises under 11 U.S.C. § 362(c)(3)(C)(i)(II) because the dismissal of the Debtor's prior Chapter 11 case occurred after the Debtor failed to timely file monthly operating reports in his Chapter 11 case. Ms. Comstock also asserts that the presumption arises under 11 U.S.C. § 362(c)(3)(C)(i)(III) on grounds that there has not been a substantial change in the personal or financial affairs of the Debtor since the dismissal of the Debtor's Chapter 11 case. There is no evidence before the Court regarding the Debtor's financial condition as of the dismissal of the Chapter 11 case from which the Court can conclude that a substantial change occurred between the time the prior case was dismissed and the time the Debtor filed the instant Chapter 13 case. Further, in view of the Court's denial of confirmation of the First Amended Chapter 13 Plan, the Debtor has not demonstrated any other reason to conclude at this time that he will confirm a plan in this case. The Court therefore finds

---

[13] Section 362(c)(3)(C)(i) provides in full:
  For purposes of paragraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)—
   (i)   as to all creditors, if—
     (I)   more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;
     (II)  a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to—
       (aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
       (bb) provide adequate protection as ordered by the court; or
       (cc) perform the terms of a plan confirmed by the court; or
     (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded—
       (aa) if a case under chapter 7, with a discharge; or
       (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed.
  11 U.S.C. § 362(3)(C)(i).

for purposes of applying 11 U.S.C. § 362(c)(3)(B) that the presumption has arisen under 11 U.S.C. § 362(c)(2)(3)(C)(i)(III).

The *Gier* factors used to determine whether a debtor has filed his chapter 13 case in good faith for purposes of satisfying 11 U.S.C. § 1325(a)(7) are also relevant to determine good faith filing for purposes of continuing the automatic stay. *See Montoya,* 333 B.R. at 458-60 (finding that the standard for assessing good faith, when applied in the totality of the circumstances "can still be useful to determine whether the Debtor has filed th[e] case in good faith as to the creditors to be stayed[,]" and concluding that because 11 U.S.C. § 362(c)(3)(B) requires the court to consider the debtor's good faith from the creditor's perspective, the Court should give more weight to *Gier* factors five (the debtor's motive in filing the petition and how the debtor's actions affected creditors) and six (the debtor's pre- and post-petition treatment of creditors)).[14] However, the Court's inquiry under 11 U.S.C. § 362(c)(3) necessarily has a different focus than the Court's inquiry under 11 U.S.C. § 1325(a)(7). *See Tomasini,* 339 B.R. at 782 (concluding that the standard for continuing the stay is different from the standard for determining whether the debtor filed his petition in good faith under §1325(a)(7), so that the court's denial of a motion to continue the stay does not foreclose a finding for purposes of confirmation that the debtor filed his petition in good faith. ).

Both 11 U.S.C. § 1325(a)(7) and 11 U.S.C. § 362(c)(3)(A) (assuming the debtor is the party requesting a continuation of the automatic stay) require the debtor to demonstrate that the

---

[14]*But cf. In re Benefield,* 438 B.R. 709, 715 (Bankr.D.N.M. 2010)(J. Starzynski)(questioning whether the totality of the circumstance test should be applied at all to 11 U.S.C. § 362(c)(3) and (4), and concluding that "at a minimum a court should first apply the 'objective futility' test[]" such that if the debtor cannot demonstrate that the current case will be successful even though the previous cases were not, the court does not reach the totality of circumstances test.).

16

petition was filed in good faith.[15] But unlike 11 U.S.C. § 1325(a)(7), 11 U.S.C. § 362(c)(3) contains a *presumption* of bad faith filing under certain circumstances, which, if the presumption arises, can only be rebutted by clear and convincing evidence to the contrary. *See* 11 U.S.C. § 362(c)(3)(. . . but such presumption may be rebutted by clear and convincing evidence to the contrary.").

The Court has already determined for purposes of 11 U.S.C. § 1325(a)(7) under the *Gier* factors that the Debtor filed his Chapter 13 petition in good faith. But the Court has also determined that the Debtor has failed to demonstrate that his *plan* was filed in good faith. For purposes of 11 U.S.C. § 362(c)(3), the Debtor has not established that his Chapter 13 case was filed in good faith because the Debtor has not demonstrated by clear and convincing evidence that this case will be concluded with a confirmed Chapter 13 plan that he will fully perform.

Even though the evidence falls short of satisfying the "clear and convincing" standard for rebutting the presumption under 11 U.S.C. § 362(c)(3)(C), the termination of the automatic stay with respect to property of the Debtor will likely have no practical effect in this case. In *Holcomb,* 380 B.R. 813 (10th Cir. BAP 2008), the Bankruptcy Appellate Panel of the Tenth Circuit held "that the language of §362(c)(3)(A) terminates the stay only as to the debtor and the debtor's property." *Holcomb,* 380 B.R. at 816.[16] Thus, even though the automatic stay terminates with respect to the Debtor and the Debtor's property, the automatic stay does not terminate in its entirety and continues to protect property of the bankruptcy estate. *Id.* Though this Court may not technically be bound by the decisions of the Tenth Circuit Bankruptcy Appellate Panel (the "Tenth Circuit BAP"), the Court will generally treat published Tenth Circuit

---

[15]11 U.S.C. § 362(c)(3)(B)( providing that the stay may be extended "only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed."); 11 U.S.C. § 1325(a)(7)("the action of the debtor in filing the petition was in good faith" is a requirement for confirmation of a Chapter 13 plan).
[16]*But see In re Daniel,* 404 B.R. 318 (Bankr.N.D.Ill. 2009)(concluding that the phrase "with respect to the debtor" used in 11 U.S.C. § 362(c)(3)(B) does not limit the scope of the termination of the automatic stay).

17

BAP decisions as persuasive authority. *See In re Wenzel,* 415 B.R. 510, 516-17 (Bankr.D.Kan. 2009)(acknowledging that the bankruptcy court might not be bound to follow a BAP decision, but that the "Court's practice is to give appropriate deference to published BAP decisions and treat them as persuasive authority, absent a compelling reason to depart."). Given the express limitation in 11 U.S.C. § 362(c)(3)(A) to termination of the stay only as to the debtor, and the distinction made in 11 U.S.C. § 362(c)(1) and (2) between property of the estate and property of the debtor, the Court regards *Holcomb* as persuasive authority.

Further, the practical effect of the Court's ruling as to termination of the stay will be limited by 11 U.S.C. § 1327(a) in the event the Debtor is ultimately able to confirm a plan in this case. If a plan is confirmed, Ms. Comstock will be bound by its terms.[17] *See* 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor . . . whether or not such creditor has objected to, has accepted, or has rejected the plan."). If a debtor is not in default of his obligations under a confirmed plan, no default remedy would be available even in the absence of a stay.

Based on the foregoing, the Court concludes that the Debtor's plan cannot be confirmed and that the automatic stay terminated with respect to the Debtor and the Debtor's property but not with respect to property of the bankruptcy estate. The Debtor may file a further amended plan should he choose to do so. The Court will enter separate orders consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

---

[17]*Cf. In re Underhill,* 425 BR 614, 618 (Bankr.D.Utah 2010)(noting that "[e]ven if § 362(c)(4)(A) applies and there is no stay in effect because the debtor has failed to seek an order that the stay take effect under § 362(c)(4)(B), a confirmed chapter 13 plan that provides for the curing of a prepetition default on a secured creditor's claim precludes a secured creditor from enforcing its lien with respect to the prepetition default.").

18

Date entered on docket:    February 11, 2013

COPY TO:

Chris W. Pierce
Leslie Dyer Maxwell
Hunt & Davis, P.C.
Attorneys for Debtor
2632 Mesilla Street NE
Albuquerque, NM 87110

Stephen CM Long
Attorney for Denise Comstock
4804 Hawkins St., N.E.
Albuquerque, NM 87109

Kelley L. Skehen
Chapter 13 Trustee
625 Silver Avenue SW, Suite 350
Albuquerque, NM 87102-3111